UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Wealth Enhancement Group, LLC, | Case No. 0:23-CV-3034 (JMB/JFD) |
| Plaintiff, | |
| v. | **JOINT MOTION FOR ENTRY OF CONSENT JUDGMENT** |
| Julie Darrah, | |
| Defendant. | |

---

Plaintiff Wealth Enhancement Group, LLC ("WEG"), and Defendant Julie Darrah ("Darrah" or "Defendant") (collectively, the "Parties"), jointly move to request that the Court enter final judgment in the form attached hereto as Exhibit 1 (the "Proposed Final Judgment") and incorporated by reference herein. The Parties provide the following grounds in support of their motion:

**Allegations and Procedural History**

1. The Court has jurisdiction over this case pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

2. On September 29, 2023, WEG filed a complaint in the above-captioned action (the "Action") against Darrah asserting claims for fraud, misrepresentation, breach of contract, breach of warranty, breach of fiduciary duties, professional negligence, tortious interference, and unjust enrichment, among other things. ECF No. 1. On October 4, 2023, Darrah executed a waiver of the service requirements of Federal Rule of Civil Procedure Rule 4. ECF No. 6. On November 29, 2023, Plaintiff filed an amended complaint in the Action, adding a claim against Darrah for violation of Section 10(b) and Rule 10b-1 under

1

the Securities Exchange Act of 1934, and alleging that Darrah also violated the Antifraud Provision and the Custody Rule under the Investment Advisers Act of 1940 (the "Investment Advisers Act"). ECF No. 23.

3. Plaintiff commenced this action after uncovering evidence that led it to believe that Defendant Darrah engaged in fraud and other wrongdoing to covertly steal millions of dollars from a small number of clients of Vivid Financial Management, Inc. ("Vivid"), a registered investment adviser and wealth management firm that was co-founded by Defendant, who sold most of the adviser's assets to Plaintiff (including customer accounts and relationships) in December 2021. *See* ECF No. 13 ("Amended Complaint") ¶¶1, 13, 16, 20. As alleged in the Amended Complaint, Darrah covered her tracks by ingratiating herself into her clients' family affairs, visiting them at home and assisted living facilities, counseling them as they grieved, accompanying them on medical appointments—all in ways that ran afoul of financial advisor professional boundaries. *See id.* ¶2. Darrah allegedly abused her clients' trust, arranging for them to meet with a disbarred attorney, who prepared documents appointing her as trustee and beneficiary of client trusts, providing her power-of-attorney authority over clients' bank accounts (accounts held by third parties that were outside of the scope of their advisory relationship with WEG), and even vesting her with medical and healthcare decision-making authority over those who did not question her bona fides. *See id*. From there, Darrah allegedly repeatedly used her ill-gotten authority over client affairs to transfer several million dollars of their savings to herself by directing transfers to a seemingly appropriate client account controlled by a third party bank, and then funneling that money to herself. *See id.*

2

4. WEG is committed to making its clients whole for any misconduct by Darrah while she was affiliated with WEG, and brought this action to recover the damages that WEG alleges they and it suffered from Darrah's fraud and wrongdoing. WEG also seeks to recover from Darrah for damages it allegedly sustained in connection with WEG's acquisition of certain Vivid assets (the "Vivid Transaction"); the alleged post-transaction fraud that Darrah perpetrated and concealed; Darrah's alleged lying, stealing, and breaching fiduciary and contractual duties; and for allegedly exposing WEG clients to harm during the brief time she was associated with a firm that she allegedly knows places integrity and client trust above everything. WEG also brought the lawsuit with the intent to seek injunctive relief preventing Darrah from doing any more harm to the clients WEG believes she stole from for so many years—beginning even before any association with WEG.

5. Defendant asserted her Fifth Amendment and Fourteenth Amendment rights to remain silent in response to the Complaint. ECF No. 25.

6. The Parties agreed to expedited discovery at the outset of the Action. The Parties completed their respective pre-discovery disclosures on March 11, 2024. On or about June 13, 2024, Defendant completed her production of documents in response to Plaintiff's First Set Of Requests For Production Of Documents.

7. Subsequently, in August and September 2024, the Parties engaged in discussions regarding potential resolution of this matter. On October 18, 2024, the Parties reached an agreement in principle to settle the Action.

8. On October 29, 2024, the Parties entered into a settlement agreement (the "Settlement Agreement") pursuant to which Defendant agreed to: (i) pay WEG

3

$7,000,000.00 in settlement of all claims that were or could have been asserted in the Action; and (ii) consent to the entry of a final judgment in the form attached hereto (the "Proposed Final Judgment"), which provides, *inter alia*, that final judgment shall enter with respect to every claim and cause in the Action in favor of WEG.

9. On October 30, 2024, the Parties filed a stipulation seeking entry of the Proposed Final Judgment, *see* Dkt. No. 48, and the terms of that stipulation are incorporated herein by reference.

10. The Settlement Agreement was entered into as a compromise of the claims asserted in this action. The Settlement Agreement and Proposed Final Judgment are not an admission of any fact or liability by Darrah (except for those relating to this Court's jurisdiction), and should not be construed as an admission of any fact or liability by Darrah (except for those relating to jurisdiction).

11. On November 7, 2024, the Court directed the Parties to file, on or before November 21, 2024, a motion supplying the terms of their settlement agreement, why consent judgment is warranted in this case, and argument as to the fairness, reasonableness, and adequacy of the requested consent judgment. *See* ECF No. 50 (citing *Equal Emp't Opportunity Comm'n v. Prod. Fabricators, Inc.*, 666 F.3d 1170 (8th Cir. 2012); *United States v. BP Amoco Oil PLC*, 277 F.3d 1012, 1018-20 (8th Cir. 2002). The Parties' response follows.

**Terms of the Settlement Agreement**

12. The key terms of the Settlement Agreement and the Proposed Final Judgment attached thereto are as follows:

      a.      Final Judgment shall enter with respect to every claim and cause in the Action in favor of WEG and against Defendant in the amount of $7,000,000.00, which serves to settle the monetary aspect of all claims that were or could have been asserted in the Action.

      b.      Defendant is permanently restrained and enjoined from contacting, directly or indirectly, any current or former customers of WEG, its subsidiaries, or Vivid (collectively, "Customers"), unless, after such Customer contacts Defendant, such Customer thereafter gives Defendant express and documented permission to contact them. Regardless of whether there is express and documented permission from a Customer as set forth in the preceding sentence, Defendant is permanently restrained and enjoined from talking to any Customer about WEG or Vivid business, or matters pertaining to such Customer's personal finances, investments, financial plan, trusts and/or estate plan.

      c.      Full mutual release of all known and unknown claims.

**The Proposed Final Judgment is Warranted Because the Settlement Terms Are Fair, Reasonable and Adequate**

13.    The Settlement Agreement and Proposed Final Judgment are fair, reasonable, and consistent with the purposes of the underlying law, and therefore, the proposed consent judgment is warranted. "When reviewing a proposed consent decree, the trial court is to review the settlement for fairness, reasonableness, and adequacy." *EEOC v. Product*

*Fabricators, Inc.*, 666 F.3d 1170, 1172 (8th Cir. 2012); *see also United States v. BP AMCO OIL PLC et al.*, 277 F.3d 1012, 1018 (8th Cir. 2002) (noting that the "essential respects" of a proper consent decree are "procedural and substantive fairness, reasonableness, and consistency with the meaning and purposes of" the law on which the complaint was based). The Settlement Agreement and Proposed Final Judgment "resolve a dispute within the court's subject-matter jurisdiction"; they "come within the general scope of the case made by the pleadings"; and they "further the objectives of the law upon which the complaint was based." *Local Number 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525 (1986).

14. The Parties submit that the Settlement Agreement and Proposed Final Judgment are procedurally fair. In assessing procedural fairness, the court considers whether the settling parties were "negotiating in good faith and at arm's length" when crafting the proposed consent decree. *BP Amoco Oil PLC*, 277 F.3d at 1020. The Settlement Agreement was entered into on a fully informed basis. It follows an extensive investigation by Plaintiff such that Plaintiff and Defendant are well informed of the relative merits of Plaintiff's claims and Defendant's defenses, the related damages claimed by Plaintiff and its clients, and the costs and burden of further litigation. The Settlement Agreement was negotiated at arm's length by the undersigned counsel for the Parties whom are knowledgeable in the applicable area of law, and with the input of the Parties themselves. The result of the negotiations is the Settlement Agreement and Proposed Final Judgment that is procedurally and substantively fair.

15. The Settlement Agreement and Proposed Final Judgment are also

substantively fair, reasonable, and consistent with the governing law. The Settlement Agreement and Proposed Final Judgment resolve all of Plaintiff's allegations. Moreover, the resolution will not be considered an admission of wrongdoing by Defendant or a concession by Plaintiff as to the merits of its action. Thus, the Settlement Agreement and Proposed Final Judgment are reasonable in that they resolve the dispute between the Parties, protect Darrah's alleged victims, and do not impute any culpability on Darrah that could be used against her by a government agency.

16. The Parties' Settlement Agreement and Proposed Final Judgment are also fair and reasonable because they provide substantial benefits to both Parties. The Settlement Agreement and Proposed Final Judgment avoids the further cost and distraction of litigation, which benefits both Parties and the Court.

17. With respect to Plaintiff, the Settlement Agreement and Proposed Final Judgment, upon satisfaction by Defendant, would provide substantial relief to Plaintiff, and by extension, other aggrieved parties.

18. With respect to Defendant, by agreeing to the Settlement Agreement and Proposed Final Judgment, Defendant is avoiding potential liability for significant attorneys' fees incurred to date by Plaintiff in connection with this litigation and related investigations, and pre-judgment interest. In addition, the $7,000,000 settlement amount may be less than a judgment against Defendant if this case went to trial, given that WEG calculates its damages as being a higher amount through various formulas considered.

19. The Settlement Agreement and Proposed Final Judgment also benefits non-parties allegedly harmed by Darrah. The Proposed Final Judgment also protects Darrah's

alleged victims by including a key safeguard enjoining Defendant from contacting, directly or indirectly, any Customers, unless, after such Customer contacts Defendant, such Customer thereafter gives Defendant express and documented permission to contact them. Plaintiff believes this term is reasonable and appropriate because Defendant continued to contact victims following the filing of this Action in manners that concerned Plaintiff, and Plaintiff believes that this injunction is the best way to protect Darrah's victims from further harm. Defendant also believes this term is reasonable and appropriate because many of WEG's clients are her personal friends and acquaintances, and a complete bar from all such contact with them would be unnecessarily punitive.

20. Because Defendant is agreeing to provide significant relief to Plaintiff which, if collected, will be used, in part, to compensate Defendant's alleged victims, the Settlement Agreement and Proposed Final Judgment plainly further the underlying objectives of federal law, including the Antifraud Provision and the Custody Rule under the Investment Advisers Act of 1940, and the Antifraud Provisions of the Securities Exchange Act and Rule 10b-5. It also furthers the purposes of the common law claims asserted in the Amended Complaint.

21. For the foregoing reasons, the Parties believe that the Proposed Final Judgment is fair, reasonable, and adequate, and the Parties respectfully request that this Court sign and enter the Proposed Final Judgment as final judgment of this Court.

Date: November 21, 2024                  */s/ Nicole L. Chessari*
                                          Wallace G. Hilke, Reg. No. 0175857
                                          Kathryn E. Wendt, Reg. No. 0397737
                                          **BALLARD SPAHR LLP**
                                          2000 IDS Center

80 South 8th Street
Minneapolis, MN 55402
(612) 371-3211
hilkew@ballardspahr.com
wendtk@ballardspahr.com

Jonathan Acker Shapiro (*pro hac vice*)
**GOODWIN PROCTER LLP**
3 Embarcadero Center
San Francisco, CA 94111
(415) 733-6202
jshapiro@goodwinlaw.com

Nicole L. Chessari (*pro hac vice*)
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94063
(650) 752-3100
nchessari@goodwinlaw.com

Robert Tiefenbrun (*pro hac vice*)
**GOODWIN PROCTER LLP**
601 South Figueroa Street, Suite 4100
Los Angeles, CA 90017
(213)426-2500
rtiefenbrun@goodwinlaw.com

*Attorneys for Plaintiff Wealth Enhancement Group, LLC*

Date: November 21, 2024         */s/ Doug Hyman*
**FORSGREN FISHER MCCALMONT DEMAREA TYSVER LLP**
Caitlinrose H. Fisher, Reg. No. 0398358
Caroline H. Brunkow, Reg. No. 0398936
1500 Capella Tower
225 South 6th Street
Minneapolis, MN 55402
(612) 474-3300
cfisher@forsgrenfisher.com
cbrunkow@forsgrenfisher.com

Bruce Lewitas, Reg. No. 6208422 (*pro hac vice*)
Doug Hyman, Reg. No. 6229471 (*pro hac vice*)
**LEWITAS|HYMAN**
161 N. Clark Street, Suite 1600
Chicago, IL 60601
(312) 291-4603
dhyman@securitieslaw.com
blewitas@securitieslaw.com

*Attorneys for Defendant Julie Darrah*

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Wealth Enhancement Group, LLC, | Case No. 0:23-CV-3034 (JMB/JFD) |
| Plaintiff, | |
| v. | **[PROPOSED] FINAL JUDGMENT** |
| Julie Darrah, | |
| Defendant. | |

Plaintiff Wealth Enhancement Group, LLC ("WEG") having filed the above-captioned action (the "Action") and Defendant Julie Anne Darrah ("Defendant") having entered a general appearance; consented to the Court's jurisdiction over Defendant and the subject matter of this action; consented to entry of this Final Judgment without admitting or denying the allegations of the complaint (except as to jurisdiction); waived findings of fact and conclusions of law; and waived any right to appeal from this Judgment:

1. IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Final Judgment shall enter with respect to every claim and cause in the Action in favor of WEG and against Defendant in the amount of $7,000,000.00, and as further detailed herein.

2. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from contacting, directly or indirectly, any current or former customers of WEG or its subsidiaries or Vivid Financial

Management, Inc. (collectively, "Customers"), unless, after such Customer contacts Defendant, such Customer thereafter gives Defendant express and documented permission to contact them. Regardless of whether there is express and documented permission from a Customer as set forth in the preceding sentence, Defendant is permanently restrained and enjoined from talking to any Customer about WEG or Vivid Financial Management, Inc. business, or matters pertaining to such Customer's personal finances, investments, financial plan, trusts and/or estate plan; except in connection with discovery in litigation by a Customer against Defendant.

3. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing Paragraph 2 also binds the following who receive actual notice of this Judgment by personal service or otherwise: (a) Defendant's agents, servants, partners, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

4. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant shall pay WEG $7,000,000.00 in settlement of all claims that were or could have been asserted in the Action.

5. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, the allegations in the amended complaint filed in the Action are true and admitted by Defendant, and further, any amounts due by Defendant under this Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal

securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. §523(a)(19).

6. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Parties may not challenge the validity of this Judgment, and this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Judgment.

Dated: _____  _____
UNITED STATES DISTRICT JUDGE